IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

FILED

2017 FEB 21  PM 4: 11

CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
YOUNGSTOWN

SHEILA J. LAWSON )
950 Katherine Avenue )
Youngstown, OH 44505 )
)    Civil Case No. 4: 17 CV 0358
)
           Plaintiff, )    COMPLAINT AND JURY DEMAND
)
v. )
)
JEFFERSON B. SESSIONS III )    JUDGE PEARSON
U.S. Attorney General )
U.S. Department of Justice )    MAG. JUDGE BURKE
950 Pennsylvania Avenue, NW )
Washington, DC 20530-0001 )
)
JAMES B. COMEY )
Director )
Federal Bureau of Investigation )
935 Pennsylvania Avenue, NW )
Washington, DC 20535-0001 )
)
           Defendants. )

1.      Plaintiff, Sheila J. Lawson, pro se, brings this action against Defendant United

States Attorney General Jefferson B. Sessions III and Defendant Federal Bureau of Investigation

Director James B. Comey to remedy acts that violated Title VII of the Civil Rights Act of 1964

(Title VII), as amended, 42 U.S.C. § 2000e et seq., and the Age Discrimination in Employment

Act of 1967 (ADEA), as amended, 29 U.S.C. § 621 et seq.  Plaintiff seeks relief for the acts of

discrimination that denied Plaintiff her right to engage in protected EEO activities, denied

Plaintiff her right to engage in pending employment discrimination lawsuits, and denied Plaintiff

reinstatement in the FBI SA position.  Plaintiff seeks relief for the acts of retaliation that

interfered with Plaintiff's participation in EEO discrimination complaint procedures with the

1

FBI, interfered with Plaintiff's pending employment discrimination lawsuits against Defendants, interfered with Plaintiff's travels to and access to two U.S. District Courts to develop her pending claims in lawsuits against Defendants, failed to end FBI and DOJ employee's and Confidential Human Source's (CHS's) continual misconduct that Defendant's designed to destroy Plaintiff due to her receipt of the notice of right to file a lawsuit and to destroy the lawsuits, and denied Plaintiff reinstatement in the FBI SA position.  Defendant's discriminated and retaliated because of Plaintiff's age (at least 40 years old), race (African-American) and sex (female), and participation in protected EEO activities and pending lawsuits against Defendants.

<u>Jurisdiction and Venue</u>

2.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff's claims against Defendants involve federal statutes.  The venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events causing this litigation occurred in Youngstown, OH where the FBI's Cleveland Division and Youngstown Resident Agency are located.

3.      Plaintiff has exhausted administrative remedies and received a decision from the Equal Employment Opportunity Commission (EEOC), Office of Federal Operations (OFO).  The OFO decision is attached and made a part hereto, see Exhibit A.

<u>Parties</u>

4.      Plaintiff, Sheila J. Lawson, is an African-American female who is at least 40 years of age.  Plaintiff is an applicant for reinstatement in the FBI SA position during all relevant times for matters Plaintiff has complained of herein.  Plaintiff is litigating against Defendants in U.S. District Courts in regard to her claims of a discriminatory age-based FBI Special Agent reinstatement policy, discriminatory hiring practices and/or retaliation due to her participation in

protected EEO activities.  As an applicant and former employee of the DOJ, FBI, Plaintiff is entitled to bring her claims and seek legal and equitable remedies from Defendants for violations of Title VII and the ADEA.

5.    Defendant, United States Attorney General Jefferson B. Sessions III, leads the DOJ and is the chief law enforcement officer of the DOJ law enforcement agencies to include the FBI.  Attorney General Sessions is a party because the Attorney General advises the FBI Director in regard to the FBI's missions and personnel to include the Attorney General's administrative and operational guidelines, policies and directives.  The Attorney General establishes mandatory requirements for the FBI's hiring policies and practices, the FBI's equal employment opportunity program, the utilization of FBI CHSs and DOJ informants, and provides review and corrective action for misconduct by FBI personnel.  Provisions in Title VII and the ADEA and the Attorney General's policies bind the Attorney General in this lawsuit.

6.    Defendant, FBI Director James B. Comey, leads the FBI from FBI Headquarters in Washington, DC and controls the FBI's operations, divisions and personnel.  FBI Director Comey is a necessary party as the chief executive responsible to create and implement all FBI policies and practices to include hiring policies and practices of the Human Resources Division (HRD), policies and practices of the FBI's EEO program, and policies and practices of the FBI CHS Program, all with main offices located at FBI Headquarters.  The FBI Director consults with the Attorney General and must implement the Attorney General guidelines, policies, orders, and instructions in the FBI's HRD, EEO and CHS programs.  Under Title VII and the ADEA, the FBI Director's employment policies, practices and decisions bind the office of the FBI Director in the matters Plaintiff has complained of herein.

<u>Facts</u>

3

7.      Plaintiff is an African-American female.

8.      Plaintiff was at least 40 years old during all relevant times in matters that Plaintiff has complained of herein.

9.      On or about October 15, 1995, Plaintiff entered on duty with the DOJ, FBI as a FBI Special Agent (SA) through the hiring process administered by the HRD.

10.     On or about July 7, 2006, Plaintiff resigned from the FBI SA position while she was assigned to FBI Headquarters in Washington, DC as a Supervisory Special Agent.

11.     In 2006, Plaintiff resigned and did not voluntarily retire from the FBI at any time.

12.     The DOJ EEO Program relies on statutes, regulations and guidelines for underlying authority for its policies and procedures.[1]  Instructions in Section 4 of the DOJ Formal Complaint Procedures provide that EEO Complainants and EEO Counselors in the performance of their counseling duties must be free from restraint, interference, coercion, discrimination, or reprisal at every stage in the presentation and processing of a complaint, including the counseling stage, or at any time thereafter.[2]

13.     In 2006 and in 2007, Plaintiff participated in the EEO discrimination complaint process through the Office of Equal Employment Opportunity Affairs at FBI Headquarters in Washington, DC and in 2007 withdrew her pending EEOC complaint against the FBI.

14.     During 2007 – 2010, Plaintiff requested reinstatement in the FBI SA position, requested reconsideration for hiring decisions made by HRD's Unit Chiefs and in 2010 was denied the FBI SA positon by the HRD's Assistant Director (AD) Anthony Bladen.

15.     In 2010, Plaintiff participated in the EEOC formal discrimination complaint process through the FBI Headquarters EEO office and asserted that FBI employees discriminated

---

[1] See, http://www.ojp.usdoj.gov/about/offices/eeo_program.htm.
[2] Id.

4

and retaliated against her when her reinstatement was denied based on a discriminatory age-based policy, discriminatory hiring practices and/or retaliation.

16.      In around 2011, Plaintiff filed with the EEOC Administrative Judge a spin-off EEOC discrimination and/or retaliation complaint because in 2010 - 2011, Plaintiff's former FBI UC, UC Robert Enriquez, who knew Plaintiff filed a prior discrimination complaint against him in 2006, appeared as UC in the FBI's EEO office and supervised Plaintiff's pending case including personnel who processed the discrimination claims and investigated Plaintiff's claims.

17.      In 2010 and in 2011, UC Enriquez intentionally deterred Plaintiff from participating in EEO activity in violation of the Attorney General policy stated *supra* at ¶ 12.

18.      In 2010 and in 2011, UC Enriquez denied Plaintiff's right to participate in the EEO discrimination complaint procedures in violation of the Attorney General policy stated *supra* at ¶ 12.

19.      On February 21, 2012, HRD AD David Bennett gave sworn testimony which advised that AD Bennett was HRD's Deputy Assistant Director when AD Bladen circumvented the FBI Director's and Attorney General's review and approval for an age waiver and issued the denial letter dated March 26, 2010 for the FBI Special Agent position which reason for the AD Bladen's denial was, according to AD Bennett, because of Plaintiff's age.

20.      Plaintiff qualified for the FBI SA position which HRD AD Bennett stated on February 23, 2012 in his sworn testimony when AD Bennett said Plaintiff had options to be hired as a FBI SA.

21.      In 2012, HRD AD Bennett told Plaintiff "we are trying" to hire more African-American females and in view of workforce diversity statistics that showed of about 13,000 FBI SAs, 152 were African-American females admitted "we need to do better" and ". . . we can

always have more" and specified that African-American females did not need to be foreign language speakers or computer specialists to be hired for the FBI SA position.

22.     The FBI's CHS Program implements the Attorney General Guidelines (AGG) that provide mandatory DOJ policy for human intelligence sources utilized in any FBI territory, including in the FBI Cleveland Division and FBI Youngstown Resident Agency, and other DOJ informants are also governed by the AGG.

23.     The AGG in addition to FBI policy governs CHS's instructions, payments to CHSs and the reporting requirement for a CHS's unauthorized illegal activity.

24.     CHSs activities are directed by FBI SAs or other FBI personnel.

25.     CHSs provide information to FBI SAs or other FBI personnel.

26.     Management and oversight for the CHS Program is the responsibility of SSAs, CHS coordinators and executive managers in a field office and FBI Headquarters Directorate of Intelligence Units that oversee all FBI territories in conjunction with the Office of the General Counsel (OGC), and DOJ oversight and review units.

27.     In 2014, in regard to Plaintiff's EEO matter that she filed in 2010, Plaintiff and the DOJ, FBI awaited a decision for her appeal to the EEOC, Office of Federal Operations (OFO), from an EEOC Administrative Judge's decision without a hearing in 2013.

28.     In around August 2014, Plaintiff initiated through the FBI Headquarters EEO office an EEO complaint of discrimination and retaliation in which Plaintiff asserted that FBI SAs in the Cleveland Division, Youngtown Resident Agency, unilaterally and in conjunction with FBI CHS City of Youngstown officials that formerly employed Plaintiff, engaged in conduct that unlawfully deterred Plaintiff from participating in the ongoing 2010 EEOC discrimination complaint process, as discussed *supra* in ¶¶ 15-21, and from participating in an

employment discrimination lawsuit against the City of Youngstown and other municipal defendants.

29.     Also in around August 2014, at times when Plaintiff used her computer to draft documents for the new EEO litigation, Plaintiff received threatening text messages from three uncles who live in Georgia and the threats advised Plaintiff she was being subjected to physical surveillance as well as "spying", "wireless" surveillance, individuals "WATCHING YOU" in exchange for money or for free, and a "FBI adjudicators" "questionnaire" that an uncle was in receipt of.

30.     Magistrate Charles J. Lawson who participated in sending the text messages is a CHS, according to former SSRA Gerald Green in November 2015 who was formerly assigned to the Atlanta Division, Tifton RA.

31.     In November 2014, Plaintiff held a telephone conversation with SSA Larry Neal who was assigned to FBI Headquarters, Directorate of Intelligence, Human Intelligence Management Unit, at which time SSA Neal acknowledged in July 2014 that he and Attorney Danielle Blair received Plaintiff's request for disclosures of identities of FBI CHSs and/or DOJ informants who on a continual basis for several years wrongfully influenced court events in Youngstown that prevented Plaintiff's participation in protected EEO activities or denied her participation, among other CHS's crimes the FBI Special Agents wrongfully acquiesced to in and around Youngstown.

32.     In April 2015 and in May 2015, Plaintiff sent correspondence to two FBI Youngstown Resident Agency supervisors that reported the numerous threatening text messages Plaintiff received in about eight months as Plaintiff filed the new EEO discrimination complaint

regarding conduct of FBI SAs in the Youngstown Resident Agency and Cleveland Division and Plaintiff completed discrimination complaint procedures with the FBI.

33.     In April 2015 and May 2015, and thereafter, Plaintiff never received a response from FBI personnel regarding an investigation of or prosecution of the text's senders, or the sender's status as a CHS who was engaged in unauthorized illegal activity that targeted Plaintiff such as interstate stalking or intimidation.

34.     On May 28, 2015, and thereafter, over 20 law enforcement officers conducted a unjustified search of the property at 950 Katherine Avenue, a U.S. Marshal approached Plaintiff with a semi-automatic rifle and said "Sheila", officers damaged property in the house, and a neighbor, Mildred Payne, said a FBI Special Agent in the group told her to keep it hush-hush that the FBI participated in the search.

35.     On May 28, 2015, and thereafter, the law enforcement officers and Youngstown Resident Agency supervisor (SSRA), Todd Werth, failed to disclose the name of a FBI SA who searched the house or property and SSRA Werth said no FBI SA participated in the search on May 28, 2015.

36.     On or about June 26, 2015, Plaintiff met SSRA Werth and SA Robert Carson at the Youngstown Resident Agency at which time SSRA Werth reviewed blatant crimes by City officials and other individuals who targeted me, and responded that he did not want to investigate any civil rights complaints that required him to search for a Title 18 criminal civil rights violation, among other ridicule.

37.     Also on or about June 26, 2015, SSRA Werth told me he would discuss violations of criminal civil rights statutes with a federal prosecutor and respond in a few weeks, but SSRA Werth never contacted me after his meeting with a federal prosecutor.

38.     On or around July 16, 2015, former City of Youngstown Law Director/Chief Prosecutor Anthony Farris used a car with license plate number "EVJ1779" to menace Plaintiff.

39.     On or around July 16, 2015 and thereafter, Plaintiff informed the FBI Cleveland Division that Farris is a CHS who is engaged in continued acts of discrimination and retaliation against Plaintiff.

40.     On or around July 16, 2015 and thereafter, Cleveland Division never responded to Plaintiff's request about Farris's menacing on July 16, 2015 or Farris's status as a CHS.

41.     In July 2015, Plaintiff and the DOJ, FBI received from the EEOC, OFO two notices of Plaintiff's right to file a lawsuit in October 2015 in either or both matters that were being reviewed by EEOC, OFO personnel for a decision in 2014.

42.     Also in July 2015, Plaintiff held a telephone conversation with Monique Funderburk who is employed with the National Security Agency in Maryland.

43.     Also in July 2015, during the telephone conversation, Funderburk introduced the name Sonya, said Sonya Bailey practiced law in Mobile, AL and said Bailey advertised her law office with general business and a picture standing next to a shelf full of books.

44.     In a letter dated August 7, 2015, Plaintiff requested Assistant Special Agent in Charge (ASAC) Todd Wickerham, Cleveland Division, to review and correct matters involving my reports of crime that targeted me because of my protected EEO activities, CHSs unauthorized illegal activities, and FBI Special Agent's conduct since April 2015 that constituted acts of discrimination and retaliation against me.

45.     After ASAC Wickerham received the letter dated August 7, 2015, ASAC Wickerham never responded with any information to include Farris, the threatening text messages or the search conducted by local police and several federal law enforcement officers.

46.     Beginning on and around September 18, 2015, at about 9:00 p.m. Plaintiff talked to the NSA's Funderburk's associate named Sonya Bailey while Plaintiff did not use a telephone or computer to hear Bailey talk or to speak back to Bailey.

47.     Beginning on and around September 18, 2015, leaders among Plaintiff's municipal and federal sector employers also criminally utilized a government communications and intelligence-gathering program that is the hallmark of the National Security Agency's resources and directly contacted Plaintiff with the advanced intelligence technology and access code or access information.

48.     The access code has been circulated outside of federal government control to approximately 60 fully identified county and city public officials and citizens who spend consecutive hours and consecutive days spying and communicating with Plaintiff to destroy Plaintiff and Plaintiff's employment discrimination lawsuits.

49.     Beginning on and around September 18, 2015, the five FBI and DOJ employees who used the communications and intelligence technology to criminally spy and communicate are a) SSA Gregory Jones, FBI Headquarters, b) Synthia Jones, DOJ in Washington, DC, c) SSA Larry Neal, FBI Headquarters, d) SA Anthony Sano, Youngstown Resident Agency, and e) FBI Supervisory Agent Tracy Smith, title and assignment unknown.

50.     Three days earlier on and around September 15, 2015, Essie Mae Jefferson of Merrillville, IN utilized the communications and intelligence technology and talked at length at about 3:00 a.m. when Plaintiff heard the sound of a grenade hit the cement outside at the front porch of the house, and when Plaintiff thought, I heard something, Jefferson said, "I heard it too."

51.     Other individuals who discussed the grenade throwing incident using the communications and intelligence technology on and around September 18-19, 2015 and thereafter are:  Cynthia Parson of the Atlanta, GA area, Sonya Bailey of Mobile, AL, and Detective Jose Morales (now retired), City of Youngstown Police Department, Youngstown, OH.

52.     On or about September 18, 2015 at approximately 6:30 p.m., SSA Neal covertly contacted Plaintiff and told Plaintiff the FBI Director knew him and said, "The FBI Director sent me."  SSA Neal talked to Plaintiff for several consecutive days after September 18, 2015.

53.     SSA Neal has criminally spied and communicated with Plaintiff intermittently since September 18, 2015.

54.     On or about September 18, 2015, SSA Neal covertly told Plaintiff, "I know Derrick, he's my frat brother" speaking about Derrick Lawson, Plaintiff's cousin who is employed with a military intelligence squadron in Ohio.

55.     Several members of SSA Neal's fraternity utilized or distributed the intelligence technology and access to a communications network to include SSA Jones, retired SA Byron Fox, and Art Ward, a field bailiff employed by Judge Kobly at the Youngstown Municipal Court.

56.     On or around September 17 – 19, 2015, and intermittently thereafter, SSA Jones spoke extensively about the CHS Program.  SSA Jones stated that for no reason FBI SAs operated many CHSs from the time Plaintiff worked as Court Administrator, that the FBI Agents did not follow the FBI's policies for operating CHS's which he attributed to the high volume of CHSs that the FBI SAs operated.

57.     Also during September 17 – 19, 2015, SSA Jones told Plaintiff she was a CHS but the FBI SA who operated Plaintiff never told Plaintiff she was a CHS.

58.     Beginning on and around September 18 – 19, 2015, at approximately 11:00 p.m., City of Youngstown Municipal Court employer, Judge Elizabeth Kobly, joined SA Anthony Sano of the FBI Youngstown Resident Agency, spied and utilized the "equipment" as Judge Kobly stated.

59.     Also on and around September 18 – 19, 2015, Judge Kobly, with SA Sano, told Plaintiff she could see Plaintiff right then sitting in a chair in Plaintiff's house in Youngstown.

60.     Also on and around September 18 – 19, 2015, among Judge Kobly's comments, Judge Kobly discussed numerous projects Plaintiff completed as Court Administrator and discussed Plaintiff's professional demeanor.

61.     Also on and around September 18-19, 2015, among SA Sano's comments, SA Sano stated he said things to Plaintiff that were wrong and that he did not want Plaintiff to sue him.

62.     Also on and around September 18-19, 2015, SA Sano knew that Plaintiff participated in EEO activity in connection with her assertions about SA Sano's conduct in 2013, or knew that Plaintiff possessed the federal sector notice of right to file a lawsuit in October 2015.

63.     Also on and around September 18-19, 2015, SA Sano knew that Plaintiff filed a pending municipal sector EEOC discrimination complaint that involved he and Judge Kobly.

64.     On or about September 23, 2015, Plaintiff went to the Cleveland Division and filed a complaint of criminal activity and talked to two law enforcement personnel about the stolen communications and intelligence technology and the access that the public officials and citizens used.

65.     Also on or about September 23, 2015, as Plaintiff waited for interviewers in Cleveland, the security guard Anthony Banks, asked many questions to include whether Plaintiff wanted to do public speaking, whether Plaintiff wanted to write a book and whether Plaintiff was religious.

66.     The constant voice campaign using the communications and intelligence technology continued on or about September 24, 2015 so Plaintiff returned to the Cleveland Division to report the crime to the security guard whose name tag changed to Kevin A. Banks.

67.     Also on September 24, 2015, Banks and Plaintiff entered the lobby, Plaintiff cleared the security checkpoint, began writing out the complaint form that Banks provided, and Banks returned and took the form and told Plaintiff that Cleveland Division refused to interview Plaintiff.

68.     After Plaintiff served DOJ Defendants with the summons and copy of a Complaint, Cleveland Division personnel refused to interview Plaintiff because she had a pending employment discrimination lawsuit against DOJ Defendants.

69.     Plaintiff gathered facts about network users with the illegal access by listening to their constant conversation and Plaintiff has had her information collected 24 hours a day since at least July 2015.

70.     On or around October 15, 2015, Amber Lawson told Plaintiff they were not going to talk to Plaintiff forever but until Plaintiff lost her discrimination cases.

71.     Plaintiff never met Cornelia Robinson who was recruited by the Nathaniel Lawson family to include Cheryl Lawson and Amber Lawson of Newnan, GA.

72.     Plaintiff has no personal knowledge of any facts about Robinson.

13

73.     On and around October 19, 2015, Robinson was an unidentified black female (UBF) who spent over eight consecutive hours each day with Cheryl Lawson and Amber Lawson as the group spied when Plaintiff drafted a Complaint to file in court, read aloud every word Plaintiff drafted and spied and talked as Plaintiff drove to the courthouse, cleared the security checkpoint and conducted business in the Clerk's office in the U.S. District Court in Washington, DC.

74.     In mid to late 2016, Derrick Lawson's sisters Amber and Ashley stated that the UBF from October 19, 2015 is Cornelia Robinson who is in Washington, DC, is an attorney educated at Spelman College and Georgia State University Law School, is associated with the Sorenson organization, and owns a blue Honda Element with Florida license plate number BZWA07.

75.     Also in late December 2016, after Plaintiff listened to an island accent, Robinson and the twins said Robinson's mother who spies and talks to Plaintiff is a native of Barbados or Trinidad and operates restaurants in Pensacola, FL.

76.     Joni Lawson of Atlanta, GA who is employed at Price Middle School uses the illegal technology daily and stated that she is a CHS. In 2017, Joni Lawson told Plaintiff that Robinson is employed at Gallaudet University in Washington, DC.

77.     In mid to late July 2016, Janell Layton used the intelligence technology to tell Plaintiff that Janell showed Plaintiff money from her car window in Youngstown.

78.     Earlier in July 2015, due to the suspicious incident involving the unknown car and driver with the money, Plaintiff obtained PA license plate number GNF3156 from the gray vehicle parked at the Oak Street and McCartney intersection's red light while Plaintiff was at a stop sign at Lansdowne and Oak Street.

14

79. Plaintiff provided the license plate number to the Youngstown Police Department in August 2016 after hearing the transmissions about Janell Layton.

80. Janell Layton covertly said her uncle, Reverend Kenneth Simon is a CHS and said her mother Cynthia Layton nee Simon is a CHS and the two gave facts to a City of Youngstown Municipal Court employee to use to create a hostile environment for Plaintiff when she worked at the Court.

81. Janell Layton and her father Morris Layton covertly said Anthony Layton of York, PA died of suicide after he shot himself in the driveway in October 2015.

82. Janell Layton covertly said she and her mother bought the same hair and wore the same style when Janell showed Plaintiff the money in July 2015.

83. The covert transmissions concerning Robinson and Layton's are verifiable facts that evidence an ongoing source of funding and a network supplier who maintains the intelligence-gathering environment for the group's members to use to disrupt Plaintiff, Plaintiff's lawsuits and the business of the court to include court security.

84. The intentional and continuing unlawful acts and inaction of Defendants establish discrimination and retaliation in violation of Title VII and the ADEA.

85. Defendants unlawfully denied Plaintiff her right to engage in protected EEO activities, denied Plaintiff her right to engage in pending employment discrimination lawsuits, and denied Plaintiff reinstatement in the FBI SA position.

86. Further, Defendants interfered with Plaintiff's participation in EEO discrimination complaint procedures with the FBI, interfered with Plaintiff's pending employment discrimination lawsuits against Defendants, interfered with Plaintiff's travels to and access to two U.S. District Courts to develop her pending claims in lawsuits against Defendants, failed to

end FBI and DOJ employee's and Confidential Human Source's (CHS's) continual misconduct that Defendant's designed to destroy Plaintiff due to her receipt of the notice of right to file a lawsuit and to destroy the lawsuits, and denied Plaintiff reinstatement in the FBI SA position.

87.     Defendant's discriminated and retaliated because of Plaintiff's age (at least 40 years old), race (African-American) and sex (female), and participation in protected EEO activities and pending lawsuits against Defendants.

88.     As a direct cause of Defendant's unlawful discrimination and retaliation, Plaintiff has suffered loss and inconvenience, humiliation, loss of quality of life, deprivation of employment rights, and other inconvenience, harms and losses.

First Cause of Action

ADEA – Disparate Treatment Because of Age

89.     Paragraphs 1-88 are incorporated by reference as if fully provided herein.

90.     The Age Discrimination in Employment Act of 1967, as amended, provides it is unlawful for an employer to fail to hire or refuse to hire any individual or unlawful to otherwise discriminate against the individual with respect to his or her compensation, terms, conditions or privileges of employment because of the individual's age.  29 U.SC. § 623(a)(1).  Under the ADEA, an individual at least 40 years of age is protected from an unlawful employment practice.

91.     The Plaintiff was at least 40 years of age.

92.     Plaintiff applied for reinstatement in the FBI SA position and qualified for the FBI SA position as stated by HRD AD Bennett on February 23, 2012 when AD Bennett told Plaintiff that Plaintiff had options to be hired as a FBI SA.

93.     At all relevant times in this complaint, Defendants denied Plaintiff participation in the EEO program, interfered with her participation in the EEO program and did not hire Plaintiff in the FBI SA position.

94.     The FBI HRD failed to hire Plaintiff and then maintained an open FBI SA position and continued to seek applicants to fill the FBI SA position.

95.     The FBI HRD failed to hire Plaintiff and hired applicants who were younger than Plaintiff.

96.     As a direct cause of Defendant's unlawful discrimination, Plaintiff has suffered loss and inconvenience, humiliation, loss of quality of life, deprivation of employment rights, and other inconvenience, harms and losses.

Second Cause of Action

ADEA – Retaliation (Based On Prior And Pending Protected EEO Activity)

97.     Paragraphs 1-96 are incorporated by reference as if fully provided herein.

98.     The Age Discrimination in Employment Act of 1967, as amended, prohibits an employer from discrimination against an employee or applicant for employment due to retaliation because such individual opposed a discriminatory practice or initiated a charge of discrimination or participated, testified, or assisted in any investigation or proceeding in a matter brought under the ADEA.  29 U.S.C. § 623(d).

99.     The DOJ EEO Program relies on statutes, regulations and guidelines for underlying authority for its policies and procedures.[3]  Instructions in Section 4 of the DOJ Formal Complaint Procedures provide that EEO Complainants and EEO Counselors in the performance of their counseling duties must be free from restraint, interference, coercion,

---

[3] Id.

discrimination, or reprisal at every stage in the presentation and processing of a complaint, including the counseling stage, or at any time thereafter.[4]

100.   Plaintiff participated in prior protected EEO activity and in pending employment discrimination lawsuits.

101.   Pursuant to Plaintiff's request for reinstatement, HRD personnel knew of Plaintiff's prior protected EEO activity.

102.   Defendants interfered with Plaintiff's participation in EEO discrimination complaint procedures with the FBI, interfered with Plaintiff's pending employment discrimination lawsuits against Defendants, interfered with Plaintiff's travels to and access to two U.S. District Courts to develop her pending claims in lawsuits against Defendants, failed to end FBI and DOJ employee's and Confidential Human Source's (CHS's) continual misconduct that Defendant's designed to destroy Plaintiff due to her receipt of the notice of right to file a lawsuit and to destroy the lawsuits, and denied Plaintiff reinstatement in the FBI SA position.

103.   A causal connection existed based on the close timing between the Plaintiff's prior protected EEO activity and the adverse actions by Defendants.

104.   The intentional and continuing unlawful acts and inaction of Defendants establish retaliation in violation of the ADEA.

105.   As a direct cause of Defendant's unlawful retaliation, Plaintiff has suffered loss and inconvenience, humiliation, loss of quality of life, deprivation of employment rights, and other inconvenience, harms and losses.

<u>Third Cause of Action</u>

<u>Title VII – Disparate Treatment Due To Race And Sex</u>

---

[4] Id.

106.    Paragraphs 1-106 are incorporated by reference as if fully provided herein.

107.    Title VII of the Civil Rights Act of 1964, as amended, provides it is unlawful for an employer to fail to hire or refuse to hire any individual or unlawful to otherwise discriminate against the individual with respect to his or her compensation, terms, conditions, or privileges of employment because of such individual's race or sex.  42 U.S.C. § 2000e-2.  With Title VII as the underlying authority, African-American female is a sub-group protected from an employer's unlawful employment practices as compared to the protection afforded any other similarly situated employees who are not an African-American female.

108.    Plaintiff is an African-American female.

109.    Plaintiff applied for and qualified for the FBI SA position which was stated by HRD AD Bennett on February 23, 2012 when AD Bennett told Plaintiff that Plaintiff had options to be hired as a FBI SA.

110.    At all relevant times in this complaint, Defendants denied Plaintiff participation in the EEO program, interfered with her participation in the EEO program and did not hire Plaintiff in the FBI SA position.

111.    The FBI HRD failed to hire Plaintiff and then maintained an open FBI SA position and continued to seek applicants to fill the FBI SA position.

112.    The FBI HRD failed to hire Plaintiff and hired applicants who outside of Plaintiff's protected subgroup.

113.    Defendant's wrongful conduct constituted intentional discrimination.

114.    As a direct cause of Defendant's unlawful discrimination, Plaintiff has suffered loss and inconvenience, humiliation, loss of quality of life, deprivation of employment rights, and other inconvenience, harms and losses.

Fourth Cause of Action

Title VII – Retaliation (Based On Prior And Pending Protected EEO Activity)

115.     Paragraphs 1-114 are incorporated by reference as if fully provided herein.

116.     The DOJ EEO Program relies on statutes, regulations and guidelines for underlying authority for its policies and procedures.[5]  Instructions in Section 4 of the DOJ Formal Complaint Procedures provide that EEO Complainants and EEO Counselors in the performance of their counseling duties must be free from restraint, interference, coercion, discrimination, or reprisal at every stage in the presentation and processing of a complaint, including the counseling stage, or at any time thereafter.[6]

117.     Plaintiff participated in prior protected EEO activity and in pending employment discrimination lawsuits.

118.     Pursuant to Plaintiff's request for reinstatement, HRD personnel knew of Plaintiff's prior protected EEO activity.

119.     Defendants interfered with Plaintiff's participation in EEO discrimination complaint procedures with the FBI, interfered with Plaintiff's pending employment discrimination lawsuits against Defendants, interfered with Plaintiff's travels to and access to two U.S. District Courts to develop her pending claims in lawsuits against Defendants, failed to end FBI and DOJ employee's and Confidential Human Source's (CHS's) continual misconduct that Defendant's designed to destroy Plaintiff due to her receipt of the notice of right to file a lawsuit and to destroy the lawsuits, and denied Plaintiff reinstatement in the FBI SA position.

120.     A causal connection existed based on the close timing between the Plaintiff's prior protected EEO activity and the adverse actions by Defendants.

---

[5] Id.
[6] Id.

121.     The intentional and continuing unlawful acts and inaction of Defendants establish retaliation in violation of the Title VII.

122.     As a direct cause of Defendant's unlawful retaliation, Plaintiff has suffered loss and inconvenience, humiliation, loss of quality of life, deprivation of employment rights, and other inconvenience, harms and losses.

Prayer for Relief

Wherefore, Plaintiff seeks a judgment against Defendants on all of her Title VII and ADEA claims, seeks reinstatement in a FBI SA position with eligibility to retire at age 57 and an approved age waiver to extend the retirement age of 57, a New Agents training waiver, and a FBI SA assignment mutually agreed upon that reflects a promotion.  Plaintiff requests compensatory damages of at least $300,000.00 for each violation of a Title VII claim, back pay with interest, any lost seniority and lost benefits awarded, monetary damages for each violation of an ADEA claim to include double liquidated damages for each willful violation of the ADEA, other corrective action to include an injunction against further acts depriving Plaintiff of her civil rights under Title VII and the ADEA, sanctions, attorney's fees, interest, and costs, expungement of any derogatory records, and other relief or terms of relief as set forth by Plaintiff.  Other relief may be ordered by the Court in conjunction with a hearing and agreement by the parties.

Date:  February 21, 2017

Respectfully submitted,

By:  _Sheila J. Lawson_

Sheila J. Lawson, pro se
950 Katherine Avenue
Youngstown, OH 44505
Phone: (240) 603-0728
lawsonsheila@yahoo.com

<u>Jury Demand</u>

Plaintiff requests a trial by jury on all applicable claims presented in this action.

Date:  February 21, 2017

By:      _Sheila J. Lawson_____

Sheila J. Lawson, pro se
950 Katherine Avenue
Youngstown, OH 44505
Phone: (240) 603-0728
lawsonsheila@yahoo.com